Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| CARLOS RUBÉN GÓMEZ BÁEZ  Recurrido  V.  PUEBLO, INC. Y OTROS  Peticionario | TA2025CE00762 | Certiorari procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Caso Núm.: **SJ2025CV01285**  Sobre: Despido Injustificado y Otros |
|---|---|---|

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

Grana Martínez, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de enero de 2026.

Comparece ante nosotros Pueblo Inc., en adelante Pueblo o el querellado. Presenta un recurso de *Certiorari* en el cual nos solicita que revoquemos una resolución interlocutoria del Tribunal de Primera Instancia (TPI), Sala Superior de San Juan, mediante la cual el foro declaró No Ha Lugar la Moción de Desestimación y Solicitud de Sentencia Sumaria presentada por este. Por su parte, el señor Carlos Rubén Gómez Báez, en adelante Gómez Báez o el querellante, presentó su alegato en oposición a la expedición del recurso. Contando con el beneficio de ambas posturas, nos expresamos.

II

Los hechos estrictamente necesarios para comprender la determinación que hoy tomamos son los siguientes. El señor Gómez Báez alega que trabajó por más de 26 años en la tienda Supermercados Amigo de Plaza Guaynabo con un desempeño satisfactorio. Sostuvo en su Demanda que en septiembre de 2022 Pueblo, adquirió mediante

compraventa y traspaso de negocio en marcha al menos once Supermercados Amigos que pertenecían a *Walmart,* incluyendo donde él trabajaba, el Amigo de Plaza Guaynabo. Alegó que antes del traspaso, laboraba como Encargado de Almacén y generaba un ingreso de $12.85 por hora. Posterior al traspaso indicó que Pueblo, le asignó el puesto de gondolero ("*stocker*") con un salario, durante el primer año de $10.50 por hora, de los cuales Pueblo pagaba $9.50 y *Walmart* $1.11. Sin embargo, esto cambio a partir de septiembre de 2023, fecha en la cual Pueblo, continuó pagándole sólo $9.50 por hora. Como conocedor de sus derechos, como empleado, para octubre de 2023 le planteó al Sr. Eduardo Crespo, entonces Gerente de Distrito, que todo el personal que operaba la maquinaria debía tener la certificación de la Oficina de Seguridad Ocupacional y Salud (OSHA) que a ese momento no tenían. En febrero de 2024, inspectores de la OSHA visitaron la tienda y le entrevistaron sobre si contaban con los adiestramientos y certificaciones para operar el equipo. Posteriormente y luego de haberse percatado que los empleados del supermercado Amigo ubicado en Los Paseos se le ofrecía un salario comenzando a $10.00 por hora inquirió a su Gerente por qué, sí las tiendas de Pueblo no eran franquicias, en la tienda Amigo de Los Paseos le pagaban un salario de $10.00 por hora a los empleados, lo que constituía .50 centavos más. Según el querellante el Gerente lo invitó a llamar a Recursos Humanos para recibir una explicación por la diferencia, cosa que hizo. Cuando llamó a Recursos Humanos, sostiene en su Demanda que, un tal Oscar Alberto le indicó que quien debía contestar esa pregunta era el Gerente de Distrito. Así las cosas, el 17 de mayo de 2024 cuando el Gerente de Distrito visitó el supermercado donde trabajaba le preguntó, a lo cual el Gerente de Distrito, sin contestar la pregunta le indicó que cuando acabara su "break" y comenzara nuevamente su turno pasara por su oficina. Una vez en la oficina alega que el Gerente de Distrito le indicó que estaba despedido

por conducta inaceptable. Inmediatamente lo escoltaron fuera de la tienda y le pidieron entregara las tarjetas del plan de salud e identificaciones lo que le causó una gran humillación y tristeza.[1] Razón por la cual presentó una Querella conforme el proceso sumario establecido en la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley 2-1961, según enmendada, contra Pueblo Inc., por despido injustificado y represalias. El 3 de marzo de 2025 Pueblo, contestó la querella. Expuso, entre otras, que el querellante fue despedido justificadamente por incurrir en conducta impropia, irrespetuosa e intimidante hacia el señor Oscar Alberto, conducta que violó las normas y políticas de Pueblo. Afirmativamente alegó que, a raíz de la conducta impropia del querellante, el señor Oscar Alberto redactó una queja dirigida al Sr. Nelson Vélez, mediante la cual expresó su incomodidad ante el comportamiento insultante y ofensivo exhibido por Gómez Báez. Como consecuencia, Pueblo tomó la justificada determinación de despedir al querellante por motivo de su conducta. Además, sostuvo que no tomó represalias en contra del querellante por participar en actividad protegida alguna ni por motivo alguno, por lo que éste no puede probar un caso prima facie de represalias.[2]

La Conferencia Inicial entre las partes se llevó a cabo el 9 de abril de 2025. Allí el TPI tomó nota de que la controversia principal giraba en torno a si la llamada telefónica, en la cual el querellante alegadamente reclamó condiciones injustas, constituyó conducta sancionable conforme al reglamento interno. Además, se acordó el calendario del descubrimiento de prueba. Ese día la representación legal de la parte querellante notificó que interesaba deponer al señor Oscar Alberto, quien alegadamente había generado la queja contra el querellante, pero que ante la falta de empleo de su representado su capacidad económica

---

[1] Véase Querella, entrada número 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) ante el Tribunal de Primera Instancia (TPI).
[2] Véase Contestación a Querella, entrada número 9, SUMAC TPI.

estaba limitada. El foro recomendó se evaluará la posibilidad de tomar la deposición mediante método alterno, como una grabación informal, la cual se podría formalizar posteriormente si fuese necesario. El Tribunal mostró disposición a autorizarlo, indicando que el elemento central del caso era precisamente la naturaleza de esa comunicación telefónica y si ésta justificaba el despido inmediato conforme al reglamento interno del patrono.[3] Precisa resaltar, además, que el TPI fijó la fecha de 16 de junio de 2025 como aquella en que finalizaría el descubrimiento de prueba.

Posterior a dicha fecha, el 30 de junio de 2025 Pueblo, presentó tardíamente, *Solicitud de término para presentar moción dispositiva y para que se deje sin efecto Conferencia con Antelación a Juicio.* En dicha moción, por primera vez señaló al foro recurrido una defensa de índole jurisdiccional que privaba al foro de jurisdicción sobre la materia. Sostuvo que conforme el caso de *Rodriguez Vázquez v. Hospital Español Auxilio Mutuo*, 2025 TSPR 55, (2025) el análisis de desplazamiento que reconoce jurisdicción exclusiva al *National Labor Relation Board* (NLRB) se efectúa en consideración al tipo de conducta involucrada, y no por la naturaleza del remedio solicitado. Finalmente, tres meses después Pueblo, presentó *Moción de Desestimación por falta de jurisdicción sobre la materia y solicitud de Sentencia Sumaria.* En esta alegaron que, de las alegaciones de la Querella, así como de las declaraciones bajo juramento del querellante y del señor Oscar Alberto, se desprendía que la conducta imputada al patrono involucra una práctica ilícita del trabajo bajo la NLRA. A su entender las alegaciones del querellante denunciaban una conducta regulada y catalogada como una práctica ilícita al amparo de la sección 8 de la NLRA y mediante la cual, el querellante pretendía dirimir si su despido fue en represalia por su gestión para reclamar los derechos que le correspondían a él y a sus compañeros. Para Pueblo, las acciones del querellante fueron acciones concertadas en beneficio propio y de

---

[3] Véase Minuta, entrada número 13 SUMAC en el TPI.

otros empleados, sujetas únicamente a la jurisdicción del NLRB. Según el querellado, en la medida en que el señor Gómez Báez procuraba con sus actos mejorar las condiciones de trabajo suyas y de sus compañeros de trabajo, inclusive sirviendo de portavoz para coordinar una reunión entre el Departamento de Recursos Humanos de Pueblo y los empleados, su deber era presentar su reclamo ante la NLRB y no ante el TPI.[4]

Por su parte Gómez Báez se opuso alegando que fue consistente y categórico al afirmar que las quejas y expresiones objeto de las alegaciones de la Querella fueron realizadas a título personal, no en representación de otros compañeros, por lo que era totalmente inaplicable la teoría de que lo que se alega contra el patrono es una práctica ilícita. Para el querellante era claro que Pueblo incurrió en claras represalias en su contra y lo despidió sin razón alguna, luego de 26 años de servicio. Sostuvo que en la petición de desestimación el querellado incluía de forma intencionada extractos parciales y descontextualizados de su testimonio en la deposición, con el claro propósito de ofrecer una representación distorsionada de los hechos e inducirlo al foro judicial a error. Finalmente arguyó que el caso presentaba controversias materiales de hecho que debían ser evaluadas por el foro en un juicio en su fondo toda vez que las alegaciones, particularmente aquellas que requerían valorar la credibilidad de los testigos, el proceso mental y deliberativo de los actores involucrados, y la intención detrás de las decisiones tomadas no podían resolverse adecuadamente mediante una determinación sumaria.[5] Recibida Réplica a "*Oposición a Moción de desestimación por alegada falta de jurisdicción sobre la materia y a la solicitud de Sentencia Sumaria*[6] y *Dúplica a la*

---

[4] Véase Moción de Desestimación por falta de jurisdicción sobre la materia y solicitud de Sentencia Sumaria, entrada número 54 en el TPI.

[5] Véase Oposición a *Moción de desestimación por alegada falta de jurisdicción sobre la materia y a la solicitud de Sentencia Sumaria,* entrada número 60, SUMAC de TPI.

[6] Entrada número 65, SUMAC TPI

*Réplica de Pueblo Inc.*,[7] el TPI dio por sometido el asunto. Finalmente emitió Resolución, el 4 de noviembre de 2025, en la cual consignó determinaciones de hechos controvertidos e incontrovertidos y conclusiones de Derecho. Concluyó que conforme la normativa y los hechos del caso y las alegaciones no podía deducir que se llevó a cabo una acción concertada.    Razón por la cual sostuvo que ostentaba jurisdicción para atender el reclamo. En fin, declaró No Ha Lugar la *Moción de desestimación por falta de jurisdicción sobre la materia y solicitud de Sentencia Sumaria* presentada el 14 de agosto de 2025 por la parte querellada Pueblo y señaló Conferencia Con Antelación al Juicio y Vista Transaccional para el 26 de enero de 2026.[8] Inconforme, el 14 de noviembre, el querellado presentó el recurso que nos ocupa en el cual presentó el siguiente señalamiento de error.

> (a) Erró el Honorable TPI al resolver que tiene jurisdicción sobre la materia para atender el presente caso haciendo una interpretación errónea del derecho aplicable.

Sostuvo que el hecho de que el querellante ahora alegue que sus cuestionamientos fueron para beneficio propio, no descarta el efecto colectivo que sus reclamos tendrían. Para el querellado eran quejas inherentemente grupales, las cuales por su naturaleza redundaban en el beneficio de todos los empleados; no tan sólo el querellante ("t*ruly group complaints*"). En ese sentido no se trataba de meras quejas ("mere gripes") individuales de Gómez Báez sino de reclamos que buscaban una acción por parte del patrono para el beneficio colectivo. En resumen: (1) un aumento salarial para los empleados de Amigo Plaza Guaynabo y (2) la certificación de todo el personal que operaba cierta maquinaria. Además, reiteró que con tan solo analizar las alegaciones de su querella se desprendía el propósito colectivo de las mismas.

---

[7] Entrada número 67, SUMAC TPI
[8] Entrada número 69, SUMAC TPI

Por su parte, el querellante reiteró en su alegato en oposición que, siempre se quejó o se expresó a su nombre y no a nombre de otros. En cuanto a la solicitud de sentencia sumaria, sostuvo que refutó los hechos incontrovertidos de la moción de sentencia sumaria, haciendo referencia a sus declaraciones en la deposición; a declaraciones juradas; a una notificación de penalidad emitida por OSHA, entre otros documentos pertinentes. Reiteró que la controversia sobre el despido presentaba unos hechos que requerían dirimir la credibilidad toda vez que la conversación telefónica entre el querellante y el señor Oscar Alberto que fue la razón ofrecida para el despido por el patrono. Preciso que no habiendo sido grabada y no habiendo testigos de ésta, era un hecho material y esencial que debía ser adjudicado en un juicio en su fondo. Aclaró, además, que su participación en una investigación de OSHA no constituye una actividad concertada según la definición de la NLRA razón por la cual no cae bajo su jurisdicción exclusiva. Sostuvo que la causa de acción de represalias no se basa exclusivamente en sus expresiones ante el señor Oscar Alberto o ante los gerenciales de Pueblo, relacionados con la diferencia en la paga entre empleados de la Tienda Amigo de Paseos y la paga que él recibía en Amigo de Plaza Guaynabo. El Querellante reclama, además, que fue despedido en represalias por haber participado de una investigación de OSHA que tuvo consecuencias adversas para Pueblo. En la alternativa sostuvo que aun en el hipotético caso de que aceptara que sus comentarios pudieran interpretarse como actividad concertada, la causa de acción por represalias basada en su cooperación con la investigación de OSHA permanece plenamente vigente. Esa participación ocurrió pocos meses antes de su despido y derivó en consecuencias adversas para el patrono a menos de una semana de su despido, lo que fortalece aún más la inferencia de represalia. Finalmente alegó que el testimonio del señor Oscar Alberto no debe ser creído por tener un carácter mendaz. Alegó en apoyo de su postura que, bajo juramento, el

señor Oscar Alberto mintió cuando dijo que la llamada telefónica que le hizo el querellante fue a su teléfono celular. Afirmó haber suplido a Pueblo, durante el descubrimiento de prueba, el registro de llamadas de su celular, del cual surge que el 15 de mayo de 2024 este realizó la llamada desde su celular al cuadro telefónico de las oficinas centrales de Pueblo, al número 787-757-3131, a las 2:45 pm. Esto para demostrar que el señor Oscar Alberto miente cuando dice que el querellante lo llamó a su celular pues éste último desconoce cuál es su número telefónico. Así lo prueba su registro de llamadas del cual se aprecia que no surge llamada dirigida al número de teléfono del señor Alberto, 787-691-3428.

III

## Ley de Procedimiento Sumario de Reclamaciones Laborales y el

### *Certiorari*

La Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 et seq., también conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales, provee un mecanismo procesal sumario de reclamaciones laborales para la rápida consideración y adjudicación de las querellas de obreros y empleados contra sus patronos relacionadas a salarios, beneficios y derechos laborales. *Javier Slim v. Royal Blue Hospitality*, 2025 TSPR 133 (2025).

Para cumplir su objetivo, la celeridad del proceso, la Ley Núm. 2, supra, acorta ciertos términos y condiciones que ordinariamente rigen nuestro ordenamiento procesal civil. *Javier Slim v. Royal Blue Hospitality*, supra; *Collazo Muñiz v. New Fashion World Corporation*, 2025 TSPR 22 (2025). Con ese propósito en mente, la rama legislativa disminuyó el tiempo que tiene un patrono querellado para radicar su contestación a la querella. Asimismo, limitó la discreción que tienen los jueces para conceder prórrogas al querellado para presentar su alegación responsiva. También, limita al querellado a una sola alegación responsiva en la cual

deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas u objeciones que no incluya en dicha alegación responsiva. A su vez, ninguna de las partes podrá someter más de un interrogatorio o una deposición. Tampoco ninguna de las partes podrá someter una deposición luego de haber sometido un interrogatorio ni viceversa. 32 LPRA § 3120.

No obstante, la Ley Núm. 2, *supra,* establece que los casos que se tramiten bajo el procedimiento expedito de esta, se le aplicarán las Reglas de Procedimiento Civil **en todo aquello que no esté en conflicto con las disposiciones específicas de esta ley ni con el carácter sumario de la misma. Id.** (Énfasis nuestro).

De conformidad, el carácter sumario del proceso tiene mayor peso que la economía procesal al atender una resolución interlocutoria dentro del proceso sumario. *Dávila Rivera v. Antilles Shipping, Inc.,* 147 DPR 483, 492-494 (1999). Así, la jurisprudencia de nuestro más Alto Foro local categóricamente ha resuelto y citamos: "resolvemos que nuestra facultad revisora de las resoluciones interlocutorias que se dictan en el seno de dicho proceso queda auto limitada de forma que nos abstendremos de revisarlas. De igual modo, el Tribunal de Circuito de Apelaciones deberá abstenerse de revisar dichas resoluciones." Id, pág. 497. sólo se ha permitido que este Tribunal revise resoluciones interlocutorias provenientes de un procedimiento sumario al amparo de la referida ley cuando dicha resolución sea dictada **sin jurisdicción, de forma *ultra vires*, o en casos extremos** en los cuales los fines de la justicia requieran la intervención de este Tribunal. (Énfasis nuestro). *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, a la pág. 498. Esta norma fue ratificada *Ortiz v. Holsum,* 190 DPR 511, 517 (2014), donde el Tribunal Supremo de Puerto Rico ratificó que las resoluciones interlocutorias que se tramitan al amparo de la Ley Núm. 2, *supra,* no son revisables, salvo cuando: (1) el foro primario haya

actuado sin jurisdicción, (2) existen situaciones en las que la revisión inmediata dispone del caso por completo como por ejemplo cuando el patrono ha solicitado sentencia sumaria y (3) el error tenga el efecto de evitar una grave injusticia.

La premura que sirve de hilo conductor al estatuto responde al interés social vinculado a las reclamaciones laborales. Por este medio se promueve la protección de los derechos del empleado, quien ha perdido su fuente de ingresos o ha sido privado de sus derechos. A la vez, opera como disuasivo frente a despidos injustificados y otras prácticas arbitrarias dirigidas en contra de los obreros en su ambiente de trabajo. *León Torres v. Rivera Lebrón*, 204 DPR 20, 33 (2020).

Ciertamente es norma reiterada que el carácter reparador de este procedimiento requiere que la ley sea interpretada liberalmente a favor del empleado. *Lucero v. San Juan Star*, 159 DPR 494, 506 (2003); *Ruiz v. Col. San Agustín*, 152 DPR 226, 232 (2000); *Rodríguez v. Syntex P.R., Inc.*, 148 DPR 604, 612 (1999); *Piñero v. AAA*, 146 DPR 890, 902-903 (1998). Ello, de acuerdo con la desigualdad de los medios económicos que exista entre las partes. *Lucero v. San Juan Star*, ante, pág. 504; *Piñero v. A.A.A., supra*; *Landrum Mills Corp. v. Tribunal Superior*, 92 DPR 689 (1965). Por lo tanto, el procedimiento le impone la carga procesal más onerosa al patrono, sin que ello signifique que éste queda privado de defender sus derechos. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 924 (1996).

La Ley Núm. 2, *supra,* no solo busca la premura procesal, sino que pretende proteger económicamente al obrero a quién considera generalmente en debilidad económica frente al patrono. La regulación contenida en los preceptos dispositivos de dicha ley, responden a la política pública de abreviar el procedimiento de forma que sea **lo menos oneroso posible** para el obrero. *Dávila Rivera v. Antilles Shipping, Inc., supra.* (Énfasis nuestro). Ahora bien, en el balance de intereses y

como norte de nuestra función judicial hemos de enfatizar que la interpretación liberal a favor del empleado tampoco puede ser una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba. hechos que avalen su derecho a lo reclamado. *Javier Slim v. Royal Blue Hospitality*, supra; *Marín v. Fastening System Inc.*, 142 DPR 499, 512-513 (1997); *Rivera w. Insular Wire Products Corp,* 140 DPR 912, 928 (1956).

En otro orden de cosas, el *Certiorari* es un recurso extraordinario mediante el cual un Tribunal de jerarquía superior puede revisar a su discreción una decisión de un Tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491, hoy conocido como Ley de Recursos Extraordinarios. Véase también *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction, Inc.,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728 (2016). Aunque el *Certiorari* se reconoce como un recurso discrecional la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

En los pleitos relacionados a una disposición interlocutoria al amparo de la Ley Núm. 2, supra nuestra discreción se guiará por lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *Certiorari* o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Así también nuestra evaluación ha de tomar en consideración los criterios establecidos mediante la jurisprudencia; ausencia de jurisdicción, cuando la revisión inmediata dispone del caso por completo como por ejemplo cuando el patrono ha solicitado sentencia sumaria y que el error presentado tenga el efecto de evitar una grave injusticia.

IV

Analizados los criterios antes mencionados y tomando en consideración el espíritu de la Ley Núm. 2 rechazamos intervenir en esta etapa de los procesos, razón por la cual se deniega el recurso de *Certiorari* presentado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

El Juez Ronda Del Toro disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| CARLOS RUBÉN GÓMEZ BÁEZ<br><br>Recurrido<br><br><br>V.<br><br>PUEBLO, INC. Y OTROS<br><br>Peticionario | TA2025CE00762 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV01285<br><br>Sobre:<br><br>Despido Injustificado y Otros |
|---|---|---|

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

## VOTO DISIDENTE DEL JUEZ RONDA DEL TORO

En San Juan, Puerto Rico, a 13 de enero de 2026.

Pueblo Inc. (en adelante "Pueblo, Inc." o "peticionaria-querellada"), solicita que revisemos la Resolución Interlocutoria que emitió el Tribunal de Primera Instancia, Sala de San Juan (en adelante TPI), el 3 de noviembre de 2025, notificada al siguiente día. Mediante esta, el foro primario declaró *No Ha Lugar* la Moción de desestimación por falta de jurisdicción sobre la materia y solicitud de sentencia sumaria presentada el 14 de agosto de 2025 por la parte querellada Pueblo Inc.

Evaluada la presente causa, expediría el recurso de *certiorari* y revocaría la resolución recurrida. Veamos los hechos.

El 15 de febrero de 2025, el Señor Carlos Rubén Gómez Báez (señor Gómez Báez, querellante o recurrido) presentó querella contra Pueblo, Inc. y la Compañía de Seguros A, al amparo del procedimiento sumario de la Ley de Procedimiento Sumario de Reclamaciones Laborales, según enmendada (Ley 2-

1961). Surge de la querella, que el señor Gómez Báez trabajó por más de 26 años en la tienda Supermercados Amigo de Plaza Guaynabo, con un desempeño satisfactorio. Trascendió que, en septiembre de 2022, Walmart Puerto Rico Inc. le traspasó a Pueblo, Inc., ciertas tiendas, entre ellas, el Supermercados Amigo de Plaza Guaynabo. Alegó el querellante que antes del referido traspaso, laboraba en el Supermercados Amigo de Plaza Guaynabo y generaba un ingreso de $12.85 por hora. Alegó que Pueblo le asignó el puesto de gondolero ("stocker") con un salario durante el primer año de $10.50 por hora, de los cuales Pueblo pagaba $9.50 y Walmart pagaba $1,00. Indicó que, a partir de septiembre de 2023, Pueblo continuó pagándole $9.50 por hora. Adujo que, para octubre de 2023, le planteó al Señor Eduardo Crespo, entonces Gerente de Distrito, que todo el personal que operaba la maquinaria debía tener la certificación de la Oficina de Seguridad Ocupacional y Salud (OSHA, por sus siglas en inglés), que a ese momento no tenían. Mencionó que, para noviembre de 2023, los empleados de la Tienda recibieron el adiestramiento teórico y más adelante les administraron el examen práctico. Sostuvo que, en febrero de 2024, los inspectores de la OSHA visitaron la Tienda y lo entrevistaron. Más adelante, indicó que les administraron el examen práctico y que el querellante recibió la certificación. Además, indicó que en mayo de 2024 se enteró que el salario de los empleados de Amigo de Los Paseos comenzaba a diez dólares ($10.00) por hora, lo que constituía cincuenta centavos (.50) más por hora que los empleados de su tienda en Plaza Guaynabo. Adujo que le preguntó sobre ese particular al Gerente Sergio De La Cruz y este le indicó que llamara a la oficina de recursos humanos. Que, siguiendo estas instrucciones, llamó a Recursos Humanos y

habló con el señor Oscar Alberto y éste le indicó que debía preguntarle al señor José Feliciano, Gerente de Distrito. Adujo que el 17 de mayo de 2024, cuando el señor José Feliciano visitó la tienda Amigo de Plaza Guaynabo, se le acercó y le hizo la misma pregunta sobre el salario de $10.00 por hora a los empleados. Alegó que luego de ello, el señor Feliciano le despidió por supuesta conducta inaceptable. Aseveró que antes de ese despido no había sido objeto de medidas disciplinarias que justifiquen el despido. Por estos hechos, reclamó despido injustificado, al amparo de la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq. y de la Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial (Ley de Represalias), Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 et seq. Esto último, por haberse quejado ante OSHA y ante el Gerente de Distrito. Reclamó, a su vez, daños, salarios dejados de percibir y paga futura.

El 3 de marzo de 2025, Pueblo contestó la demanda. Aceptó que le pagaba $9.50 la hora al querellante, que el 13 de marzo de 2024, inspectores de OSHA visitaron la tienda de Amigo Plaza Guaynabo y que estos entrevistaron a varios empleados. Asintieron que los empleados de Amigo Los Paseos recibían un sueldo de diez dólares ($10.00) la hora durante el mes de mayo de 2024. Alegaron afirmativamente que el 15 de mayo de 2024 el querellante llamó por teléfono al Departamento de Recursos Humanos y habló con el Señor Oscar Alberto a quien le informó que varios empleados y él querían reunirse con él sobre la notificación con tiempo de los horarios, así como,

sobre la diferencia de sueldo entre los empleados de la tienda Amigo Los Paseos y los empleados de la tienda Amigo Plaza Guaynabo y le increpó en torno a ambos temas.[9] Alegaron que, en la conversación, el querellante incurrió en conducta impropia, irrespetuosa e intimidante hacia el señor Alberto, en violación a las normas y políticas de Pueblo. Pueblo adujo que, ante la conducta impropia, irrespetuosa y ofensiva del querellante, el Señor Alberto redactó una queja y, posteriormente, Pueblo tomó la decisión de despedir al querellante por motivo de su conducta inaceptable. Alegaron afirmativamente que el 17 de mayo de 2024, el señor Feliciano visitó la tienda Amigo Plaza Guaynabo con el propósito de notificarle al querellante su despido. Negaron que el querellante fuese objeto de represalias o de ilegalidad al ser despedido. Mencionaron que el querellante fue objeto de medidas disciplinarias previo a su despido. Como defensas afirmativas, adujeron que el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia.

Las partes iniciaron el descubrimiento de prueba, incluyendo la toma de deposición del querellante y del señor Oscar Alberto. Luego de otros trámites, el 14 de agosto de 2025, Pueblo presentó una *Moción de Desestimación por Falta de Jurisdicción Sobre la Materia y Solicitud de Sentencia Sumaria*. En esencia, alegaron que el señor Gómez Báez atribuyó que su despido "fue producto de la secuencia de actividades protegidas en las que participó, que incluyen las expresiones y quejas ante el Gerente de Distrito y personal de OSHA sobre la certificación de maquinaria, y las expresiones y quejas ante el Gerente de la Tienda, el oficial de Recursos Humanos y el Gerente de Distrito, sobre por qué había una paga desigual a los empleados de su

---

[9] SUMAC TA, apéndice documento 9, página 5.

tienda en comparación con otras tiendas de la misma compañía."[10]    Señalaron que como la conducta imputada al patrono involucraba una práctica ilícita del trabajo, la jurisdicción recaía en el *National Labor of Relations Act[11]*, (NLRA). Junto a su escrito, incluyó porciones de la toma de deposición del querellante Gómez Báez de las cuales surgía de que el 15 de mayo de 2024, el querellante se comunicó con el Señor Oscar Alberto, Oficial de Recursos Humanos, Salud y Seguridad Ocupacional de Pueblo, para coordinar una reunión con él y sus compañeros de trabajo en torno a la diferencia en paga entre empleados de Amigo Los Paseos y Plaza Guaynabo.[12]    A la luz de estas expresiones, Pueblo invocó la jurisdicción del NLRB.

En la parte del derecho, Pueblo aludió a la jurisdicción exclusiva del *National Labor Relations Board,* a las disposiciones de la Ley 80-1976, para alegar que hubo justa causa para el despido y a la Ley 115-1991, sobre represalias.  Arguyó que el señor Gómez Báez debió presentar su reclamo ante la NLRB y no ante el tribunal, en la medida en que sirvió de portavoz para mejorar las condiciones de trabajo suyas y las de sus compañeros de trabajo.  Solicitó la desestimación de la reclamación por falta de jurisdicción sobre la materia, toda vez la controversia gira en torno a un asunto bajo la jurisdicción exclusiva de la Junta Nacional; y/o en su alternativa, porque el despido del Señor Gómez Báez estuvo plenamente justificado, de conformidad con el Manual de Empleos de Pueblo Inc., la Ley 80-1976, la Ley 4-2017 y su jurisprudencia interpretativa, y no se configuró represalia alguna bajo la Ley 115-1991.

---

[10] SUMAC TA, documento entrada 54, páginas 2, 6 y 29.
[11] 29 USC secs. 151-169.
[12] SUMAC TA, documento entrada 54, páginas 2 y 3.

Como complemento al escrito, Pueblo incluyó, entre otros documentos, los siguientes: algunas páginas de la toma de deposición del querellante; el contrato de empleo de este, el Manual del Empleados y el acuse de recibo, la carta de renuncia de Gómez Báez, el certificado de operador de montecargas emitido a Gómez Báez, el 20 de marzo de 2024 y ciertas páginas de la toma de deposición del señor Oscar Alberto.

En reacción, el 16 de septiembre de 2025, Gómez Báez interpuso una *Oposición a Moción de Desestimación Por Alegada Falta de Jurisdicción sobre la Materia y a la Solicitud de Sentencia Sumaria.* Aludió que los hechos 14, 15, 16, 17, 20, 24 y 36 no estaban en controversia. Asimismo, planteó que los restantes hechos estaban en controversia*.* Adujo que no aplicaba la NLRA porque Pueblo no fue un patrono unionado, que los actos alegados no se dieron en el contexto de la organización ni la negociación colectiva y porque los actos que alegó el querellante no se dieron el contexto de una acción concertada con otros empleados, sino que fueron realizadas a título personal. Señaló que, en el testimonio del querellante, este expresamente rechazó que hubo una acción concertada a nombre de otros empleados, lo que descarta que sus acciones ante la OSHA y ante el personal gerencial tuvieran como propósito iniciar o inducir o preparar una acción o quejas grupales ante la administración. Argumentó que el caso presentaba unos hechos que van a la credibilidad del querellante y del señor Oscar Alberto. Esto, debido a que la conversación telefónica entre estos, que fue la razón ofrecida para el despido, no fue grabada y no hay un testigo de esta llamada, por lo que, es un hecho material y esencial para la resolución del caso que debe ser adjudicado en un juicio en su fondo. Para refutar los

hechos de la moción de sentencia sumaria, aludió a las declaraciones del querellante en su deposición. Además, sometió una declaración jurada suya y de su esposa, una notificación de penalidad emitida por OSHA, el registro de llamadas, entre otros documentos.

El 6 de octubre de 2025[13], el querellado Pueblo replicó a la oposición a la moción de desestimación y sentencia sumaria. Allí reiteró que la Sección 7 del National Labor Relations Act provee a los empleados el derecho de organizarse, formar, unirse o ayudar a organizaciones laborales, participar en la negociación colectiva a través de representantes de su propia elección, y participar en otras actividades concertadas con el propósito de negociación colectiva u otra ayuda o protección mutua. Véase, 29 USC sec. 157. Señaló que la referida disposición de ninguna manera requiere la existencia de una unión para que algún empleado, en este caso el querellante, pueda incurrir en una actividad concertada para la cual la Junta cuenta con jurisdicción exclusiva[14].

El 21 de octubre de 2025[15], Gómez Báez interpuso la dúplica a la réplica de Pueblo. En este escrito afirmó que la participación del señor Gómez Báez en una investigación de OSHA no constituye una actividad concertada según la definición de la Ley Nacional de Relaciones Laborales (NLRA), y, por ende, no cae bajo la jurisdicción exclusiva del National Labor Relations Board (NLRB)[16]. Reiteró su alegación de que el señor Oscar Alberto era un testigo mendaz. A su vez, reafirmó sus argumentos previos en contra de la desestimación.

---

[13] SUMAC TA, Apéndice, entrada 65.
[14] Íd.
[15] SUMAC TA, Apéndice, entrada 67.
[16] Íd, pág. 2

Evaluados los reclamos de todas las partes, el 4 de noviembre de 2025, el Tribunal de Primera Instancia emitió una Resolución, en la cual declaró *No Ha Lugar* la Moción de desestimación por falta de jurisdicción sobre la materia […]. El foro primario realizó un recuento de veintisiete (27) hechos que no presentaban controversias, entre ellos, emitió los siguientes[17]:

1. El 1 de septiembre de 2022, se hizo efectiva una compraventa de activos entre Walmart Puerto Rico, Inc. por parte de Pueblo Inc., la cual incluyó once (11) tiendas Amigo, entre estas la de Plaza Guaynabo.

2. El Señor Gómez Báez comenzó a trabajar para Pueblo Inc. el 1 de septiembre de 2022.

[……..]

6. El salario más alto devengado por el querellante mientras trabajó para Pueblo Inc. fue de $9.50 por hora trabajada.

7. Como empleado nuevo de Pueblo Inc., el querellante recibió orientación sobre las política y reglas de la empresa, así como sobre temas salud y seguridad ocupacional, entre otras.

[……..]

13. Para el mes de agosto de 2022, el Señor Gómez Báez le planteó al Señor Eduardo Crespo, gerente de distrito para ese entonces, que todo el personal que operaba maquinaria debía tener unas certificaciones de OSHA, que alegadamente no tenían.

[…]

15. Como parte del proceso de adiestramientos en términos de salud y seguridad ocupacional, el Señor Oscar Alberto desarrolló un plan de actualización de licencias, tanto para los centros de distribución como para las tiendas.

16. Los adiestramientos se programaron para el mes de julio de 2023 aproximadamente, comenzando por los dos (2) centros de distribución y posteriormente las treinta (34) tiendas.

---

[17] Notas al calce omitidas.

17. El 29 de noviembre de 2023, el Señor Gómez Báez recibió el adiestramiento teórico de Operadores de Montacargas.

18. El adiestramiento teórico era una especie de repaso para el querellante porque éste ya conocía cómo se operaba el equipo.

[…]

20. El 13 de marzo de 2024, inspectores de OSHA visitaron la tienda de Amigo Plaza Guaynabo por alegaciones relacionadas a los baños de caballeros, neveras de alimentos y almacén.

24. El 13 de mayo de 2024, el querellante le inquirió al señor Sergio de la Cruz, Gerente de la tienda Amigo Plaza Guaynabo, que por qué si las tiendas de Pueblo no eran franquicias, en Amigo Los Paseos pagaban un salario de $10.00 por hora a los empleados, lo que era cincuenta centavos (.50) más por hora que a los empleados de su tienda en Plaza Guaynabo.

25. El Señor Gómez Báez indicó, en cuanto al reclamo de salario y horario, que: "pero yo… yo personalmente, yo estaba hablando por mí". Además, declaró que "Yo… yo, este, estaba reclamando por mí".

26. El Señor Gómez Báez entiende que el Señor José Feliciano tomó represalias en su contra por haber participado en la inspección de OSHA.

27. El 17 de mayo de 2024, el querellante fue despedido de Pueblo Inc.

El foro primario, plasmó en la Resolución que revisamos,

los siguientes asuntos en controversia:

1. Existe controversia sobre si el Señor Gómez Báez recibió copia del Manual de Empleados de Pueblo Inc.

2. Existe controversia sobre lo acontecido en la conversación telefónica del, 15 de mayo de 2024, entre el Señor Gómez Báez, querellante, y el Señor Oscar Alberto, oficial de recursos humanos de Pueblo Inc. Además, existe controversia sobre los siguientes hechos relacionados con dicha llamada telefónica, estos son:

a. Si el 15 de mayo de 2024, el Señor Gómez Báez procedió a comunicarse con el Señor Oscar Alberto, oficial de Recursos Humanos, Salud y Seguridad Ocupacional de Pueblo, **con el interés de coordinar una reunión con él y otros compañeros de trabajo para preguntarle sobre el tema de la diferencia salarial.**

b. Si en esa llamada del 15 de mayo de 2025, el Señor Gómez Báez le cuestionó al Señor Oscar Alberto sobre el horario de las tiendas, expresándole que cuando Pueblo tenía unión, el horario se tenía que postear los miércoles.

c. Si el Señor Gómez Báez le cuestionó al Señor Oscar Alberto que por qué si no eran franquicia, en Amigo Los Paseos estaban pagando $10.00 y en su tienda $9.50.

d. Si durante la aludida llamada, el Señor Gómez Báez también le indicó al Señor Oscar Alberto que ya se había orientado y que, a él y a su grupo de empleados, primero, le tenían que dar los $10.00 y que después le tenían que pagar retroactivamente.

e. Si el querellante con tono prepotente le preguntó al Señor Oscar Alberto que ¿cómo eso podía ser así cuando todos estaban bajo un mismo dueño? a lo que el Señor Oscar Alberto respondió que tomaría nota.

f. Si el Señor Gómez Báez procedió a subir el tono de voz y de forma irrespetuosa le increpó al Señor Oscar Alberto que ¿para cuándo podía esperar la llamada?

g. Si, acto seguido, el Señor Gómez Báez le indicó al Señor Oscar Alberto: "te voy a decir más, tú tienes trabajo gracias a mi" añadiendo que, si no hubiese sido por él, el Señor Oscar Alberto no hubiese ido a dar las certificaciones de montacargas e indicando que no tener las mismas era ilegal.

h. Si el Señor Gómez Báez reconoce que su problema es que empieza hablando bajito y luego no se controla.

i. Si la conducta desplegada por el Señor Gómez Báez fue impropia, irrespetuosa, desafiante, e inaceptable, en menosprecio de los esfuerzos gerenciales y contraria a las normas de conducta de Pueblo Inc., así como la cultura organizacional de la compañía.

3. Existe controversia sobre el motivo del despido del querellante.

4. Existe controversia sobre los alegados daños reclamados por el querellante.

El foro primario, evaluó los hechos a la luz del derecho atinente a la jurisdicción del NLRA, así como, la jurisprudencia

reciente del Tribunal Supremo en los casos de <u>González v. Mayagüez Resort & Casino</u>, *infra*, y el de <u>Nilda Rodríguez Vázquez y otros v. Hospital Español Auxilio Mutuo</u>, *infra*. Concluyó que, "ni de las alegaciones ni de los hechos incontrovertidos se puede deducir que haya habido una acción concertada". Más adelante, explicó que, "los hechos incontrovertidos demuestran que el querellante actuó para beneficio propio. Basado en lo anterior, concluimos que los hechos de este caso no van más allá de una reclamación individual que, aunque pudo haber sido discutida con otros empleados, no transcendió a constituir la acción concertada que dispone la NLRA." Por ese motivo, el tribunal de primera instancia decretó que poseía jurisdicción sobre la materia para atender el presente caso. Más adelante agregó que, "de los hechos propuestos por el querellado como incontrovertidos, se desprende que el despido se debió a la conducta desplegada por el señor Gómez Báez hacia el señor Oscar Alberto en una llamada telefónica. El querellado calificó la conducta del querellante en dicha llamada como irrespetuosa, impropia e intimidante, entre otras.

En desacuerdo con esta determinación, Pueblo presentó un recurso de *certiorari* en el que planteó como único error el siguiente:

> Erró el Honorable TPI al resolver que tiene jurisdicción sobre la materia para atender el presente caso haciendo una interpretación errónea del derecho aplicable.

Veamos el derecho aplicable.

**A.**

**Certiorari**

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 403 (2023); McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra*; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

En particular, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece los preceptos que regulan la expedición del recurso discrecional de *certiorari*, por parte del Tribunal de Apelaciones, para la revisión de determinaciones interlocutorias del Tribunal de Primera Instancia. En lo pertinente, la regla dispone que,

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la **denegatoria de una moción de carácter dispositivo**. […]

Al evaluar un recurso de *certiorari* nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas.*, Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025), que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de

un auto de *certiorari*. <u>Torres Martínez v. Torres Ghigliotty</u>, 175 DPR 83, 97 (2008). La referida Regla dispone lo siguientes criterios:

a. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

b. Si la situación de hechos planteada es la más indicada para el análisis del problema.

c. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

d. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

e. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

f. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

g. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

**Jurisdicción Exclusiva**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir los casos ante su consideración. *Rodríguez Vázquez v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 216 DPR ___ (2025); *Cobra Acquisitions, LLC v. Mun. de Yabucoa*, 210 DPR 384, 394 (2022); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *FirstBank v. Registradora*, 208 DPR 64 (2021); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 854 (2009); *Gearheart v. Haskell*, 87 DPR 57, 61 (1963).

El Poder Judicial del Estado Libre Asociado de Puerto Rico constituirá un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. Art. V, Sec. 2, Const. ELA, LPRA, Tomo I. Quiere esto decir que los tribunales

de Puerto Rico tienen jurisdicción general, salvo que esté limitado por asuntos de competencia o por la materia. *Adm. Terrenos v. Ponce Bayland*, supra. La limitación a la autoridad de los tribunales para atender y resolver una controversia sobre un aspecto legal se encuentra en la Constitución o puede ser realizada por el Estado mediante legislación.

La Regla 10.2 de Procedimiento Civil vigente, faculta a una parte en un pleito a solicitar la desestimación de la reclamación si el tribunal carece de jurisdicción sobre la materia. 32 LPRA Ap. V, R. 10. Se ha señalado que la falta de jurisdicción sobre la materia acarrea las siguientes consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o del mismo tribunal. *Rodríguez Vázquez v. Hosp. Auxilio Mutuo,* supra; *MCS Advantage, Inc. v. Fossas Blanco y otros*, 211 DPR 135, 145 (2023), citando a *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101-102 (2020). Cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso. *Beltrán Cintrón et al. v. ELA et al,* supra; *Shell v. Srio. Hacienda*, 187 DPR 109, 122 (2012); *González v. Mayagüez Resort & Casino*, supra, pág. 855.

Como parte del Derecho Administrativo convergen las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos. Ambas, doctrinas de creación judicial. La

doctrina de la jurisdicción primaria es una doctrina de abstención judicial que persigue lograr uniformidad y congruencia de las decisiones en el campo de derecho administrativo. Esto, por entender que, recurriendo en primera instancia a la agencia encargada de implantar la política pública de su ley habilitadora permitiría el desarrollo racional de la norma en base a su especialización y el conocimiento producto de la experiencia. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3da ed., Colombia, Ed. Forum, 2013, Sec. 8.3, pág. 562. En tales casos, hay jurisdicción concurrente entre la agencia y los tribunales, pero este último, cede la suya ante la ventaja de obtener la sabiduría del ente administrativo especializado.

Ahora bien, la doctrina de la jurisdicción primaria tiene, a su vez, dos vertientes. La primera es la jurisdicción primaria concurrente, que permite que la reclamación se inicie en el foro administrativo o el judicial. Como anticipamos, en estos casos, el tribunal cede la primacía a la agencia, debido a su conocimiento especializado sobre el asunto objeto de la reclamación. *Beltrán Cintrón et al. v. ELA et al*, supra, págs. 102-103. De hecho, el Tribunal Supremo de Estados Unidos ha expresado que la aplicación de la doctrina no implica que el ejercicio de jurisdicción del Tribunal ha sido eliminado, sino meramente aplazado o "pospuesto". *Ortiz v. Panel F. E. I.*, 155 DPR 219, 243 (2001); *U.S. v. Philadelphia Nat. Bank*, 374 U.S. 321, 353 (1963). La segunda vertiente se refiere, a los casos en que la ley establece que el foro administrativo tendrá jurisdicción inicial exclusiva para entender en la reclamación. La jurisdicción primaria concurrente no aplica en estos casos, porque la propia ley aclara que no existe. La jurisdicción primaria exclusiva o

estatutaria es un mandato legislativo y no una norma de índole jurisprudencial. Por esa razón, cuando la jurisdicción primaria es exclusiva de la agencia, los tribunales no tienen autoridad alguna para atender las reclamaciones en primera instancia. *Beltrán Cintrón et al. v. ELA et al,* supra, págs. 103-104. La jurisdicción primaria exclusiva comprende situaciones en que el estatuto implica que no existe jurisdicción concurrente, sino que establece una jurisdicción exclusiva. *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 677 (2009); *Hipólito Rivera Ortiz v. Municipio De Guaynabo*, 141 DPR 257, 268 (1996).

Aunque la designación de la jurisdicción primaria exclusiva debe ser clara y precisa, el legislador no siempre ha usado el término exclusivo. Al determinar si un estatuto provee o no jurisdicción exclusiva al foro administrativo, es necesario evaluar si así ha sido dispuesto expresamente en la ley o surge de esta por implicación necesaria. Puntualizamos que la jurisdicción exclusiva no evita la revisión judicial, solamente la pospone hasta tanto el organismo administrativo emita su determinación final. Ahora bien, a pesar de lo antes dicho, la jurisdicción primaria del foro administrativo puede ceder ante un planteamiento de violación a derechos constitucionales. *Beltrán Cintrón et al. v. ELA et al,* supra*,* pág. 104; *CBS Outdoor v. Billboard One, Inc.*, 179 DPR 391, 405 (2010).

La evaluación de si una agencia tiene jurisdicción sobre un asunto en particular, requiere analizar el poder que la Asamblea Legislativa le delegó. Para efectuar este análisis, las leyes deben interpretarse a base de la intención legislativa. El sentido atribuido tiene que ser cónsono con el resultado que pretendió el legislador. La interpretación de la ley debe ser conforme a la intención legislativa, la política pública y el interés social que la

inspira. Las agencias solo pueden llevar a cabo las funciones que se le encomendaron legislativamente, las que surgen de su actividad o encomienda y únicamente pueden ejercer los poderes que son indispensables para llevar a cabo sus deberes y responsabilidades. *Ayala Hernández v. Consejo de Titulares,* 190 DPR 547, 559, 561 (2014).

## C.

### Jurisdicción Exclusiva de la Junta Nacional de Relaciones Del Trabajo (NLRB por sus siglas en inglés)

Como norma general, los tribunales estatales tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales. *González v. Mayagüez Resort & Casino*, supra, pág. 856; *Tafflin v. Levitt*, 493 US 455 (1990).  No obstante, el Gobierno federal ostenta jurisdicción exclusiva sobre asuntos de derecho federal cuando el Congreso así lo dispone expresamente, o cuando es clara su intención de privar a los tribunales estatales de autoridad sobre ese asunto federal. *González v. Mayagüez Resort & Casino*, supra; *Rodríguez v. Overseas Military*, 160 DPR 270, 277 (2003); *Yellow Freight System, Inc. v. Donnelly*, 494 US 820, 823 (1990).

En vista de lo anterior, el Congreso de los Estados Unidos reconoció, mediante la *Labor Management Relations Act of 1947*, 29 USCA sec. 141 *et seq.*, también conocida como, *Ley Taft-Hartley* (en adelante, "NLRA" o "*Ley Taft-Hartley*"), jurisdicción exclusiva a la Junta Nacional de Relaciones Laborales (en adelante, "Junta Nacional" o "NLRB") para resolver controversias

que involucren prácticas ilícitas del trabajo conforme a dicha legislación. 29 USCA sec. 160; *González v. Mayagüez Resort & Casino*, supra, pág. 858; *Garner v. Teamsters Union*, 346 U.S. 485 (1953). Asimismo, reconoció la aplicación de la doctrina de campo ocupado a la reglamentación de la actividad protegida por la Sec. 7 —de la NLRA— o cuando la regulación estatal entra en conflicto con la intención del Congreso. *González v. Mayagüez Resort & Casino*, supra, pág. 858. En particular, la referida Sec. 7 dispone lo siguiente:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other **concerted activities** for the purpose of collective bargaining **or other mutual aid or protection**, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 USCA sec. 157. [Énfasis suplidos]

Es decir, la Sec. 7 de la NLRB reconoce el derecho de los empleados a organizase y participar en actividades concertadas con el propósito de negociar colectivamente o de obtener un beneficio mutuo.

El Tribunal Supremo de Puerto Rico ha explicado en varias instancias en qué las reclamaciones laborales se deberán aplicar de la jurisdicción exclusiva de la NLRB, y por tanto cuándo se desplaza la autoridad de los foros adjudicativos locales. Así, por ejemplo, en *González v. Mayagüez Resort & Casino*, supra, un empleado de ese hotel presentó ante el Tribunal de Primera Instancia una querella al amparo del procedimiento sumario que dispone la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et. seq.* El empleado alegó expresamente en su querella que "la razón de su despido fue por el 'uso válido de su derecho

constitucional de participar en actividades concertadas y a reclamar derechos que como empleado le corresponden'". *Íd*, pág. 852. Asimismo, manifestó en su querella que su patrono conocía o "entendía que estaba tratando de organizar a los empleados de su departamento y procedió a despedirlo…". *Íd*., págs. 852-853.

Por su parte, el patrono solicitó la desestimación de la querella, bajo el fundamento de que era la NLRB quien tenía la jurisdicción exclusiva para adjudicar el caso. Tanto el foro de instancia como el Tribunal de Apelaciones entendieron inmeritoria la solicitud de desestimación del patrono.

Sin embargo, el Tribunal Supremo revocó y desestimó el caso. En su análisis, el reconoció que la NLRB posee jurisdicción exclusiva para resolver controversias que involucran una práctica ilícita del trabajo según definidas en la NLRA. Además, dispuso que "hay jurisdicción exclusiva de la [NLRB] sobre actividades protegidas por la Sec. 7 [de la NLRA] o que constituyen una práctica ilícita del trabajo según la Sec. 8 (29 USCA sec. 158)". *Íd.,* pág. 859.

Para entonces auscultar si un tribunal local tiene la autoridad o jurisdicción para adjudicar controversias de la naturaleza aquí discutida, es necesario examinar si la **conducta según alegada** "está sujeta a ser sancionada por la Ley Taft-Hartley…". *Íd*., pág. 861. Además, "hay que examinar si la controversia es idéntica o diferente de a que ha podido ser presentada ante la [NLRB]". *Íd*., pág. 862. Es importante señalar que "el análisis de desplazamiento se efectúa tomando en consideración *el tipo de conducta involucrada y no la naturaleza del remedio solicitado*". *Íd*.; citando *Díaz Arroyo v. Hosp. Susoni*, 169 DPR 53, 64 (2006) (opinión de conformidad de la Jueza

Asociada Señora Rodríguez Rodríguez, a la que se unió el Juez Presidente Señor Hernández Denton) (énfasis en el original).

Con ese análisis doctrinal, el Tribunal Supremo evaluó las alegaciones del empleado consignadas en su querella y notó que este solicitó una reunión con su patrono para discutir situaciones de trabajo que le afectaban tanto a él como a sus compañeros de trabajo. Asimismo, el Tribunal Supremo consideró que el empleado alegó que fue despedido en represalia por ejercitar su derecho a realizar actividades concertadas y que su despido fue resultado de su solicitud para discutir las condiciones de trabajo que afectaban a todos los empleados en su área de trabajo. *Id*., págs. 861 y 864.

Así las cosas, el Tribunal Supremo concluyó que la conducta aseverada en las alegaciones era regulada y protegida por las Secciones 7 y 8 de la Ley Taft-Hartley. Por esa razón, concluyó que la reclamación no podía ser dilucidada ante los foros locales, sino que era la NLRB quien tenía la jurisdicción exclusiva para adjudicarla.

Recientemente el Tribunal Supremo tuvo la oportunidad de abordar otra controversia similar y aclaró varios asuntos que serán de ayuda para la adjudicación del caso de autos. En *Rodríguez Vázquez v. Hosp. Auxilio Mutuo,* 2025 TSPR 55, 216 DPR __ (2025)*,* dos empleados presentaron unas demandas ante el Tribunal de Primera Instancia en la que reclamaron despido injustificado y represalias contra su patrono, el Hospital Español Auxilio Mutuo. En esta ocasión, los empleados alegaron que fueron despedidos en represalias por haber participado como testigos en una querella que se presentó la Unidad Laboral de Enfermeros y Empleados de la Salud, organización sindical de la cual eran miembros, en contra de su patrono ante el

Departamento de Salud. Presentaron su reclamo al amparo de la Ley Núm. 115 de 20 de diciembre de 1991, conocida como la "Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial"; y la Ley Núm. 80 del 30 de mayo de 1976, según enmendada.

Por su parte, el patrono presentó mociones de desestimación basadas en que las reclamaciones de los empleados se encontraban bajo la jurisdicción exclusiva de la NLRB. Sin embargo, el Tribunal de Primera Instancia denegó la desestimación, ya que entendió que en la medida en que las reclamaciones de los empleados estaban fundadas en leyes locales y no así en las Secs. 7 y 8 de la NLRA, el foro local tenía jurisdicción para adjudicar las controversias.

El Tribunal Supremo nuevamente reiteró que en el análisis de si aplica la jurisdicción exclusiva de la NLRB, se debe efectuar a la luz del "**tipo de conducta involucrada y no la naturaleza del remedio solicitado**". *Rodríguez Vázquez v. Hosp. Auxilio Mutuo,* supra, pág. 20. (Énfasis en el original). Así pues, "cuando los hechos alegados por el demandante son (**o se podrían argumentar que son**) actos de práctica ilícita según la NLRA, ni los tribunales estatales ni los federales tienen jurisdicción". *Íd*., pág. 21. En su discusión, el Tribunal Supremo invitó a los tribunales a "apreciar si la parte que sostiene la prelación de la NLRA constató que los hechos alegados por el demandante son o se podría argumentar que son actos de práctica ilícita según el NLRA". *Íd*.

Así hizo el Tribunal Supremo en su análisis, examinó y consignó en su opinión las alegaciones más relevantes de la parte demandante. Por ejemplo, destacó alegaciones tales como

las siguientes: (1) que los demandantes eran miembros del sindicato ULEES, el cual les representaba sindicalmente ante su patrono; (2) que los demandantes, en conjunto con otros empleados, promovieron que el sindicato instara ante el Departamento de Salud una Querella en contra de su patrono, por razón de que este último contrató unos estudiantes de anestesia quienes llevan a cabo funciones que solo pueden ejecutar enfermeros anestesistas licenciados como lo eran los demandantes; (3) que los demandantes comparecieron como testigos en el proceso de la querella administrativa; (4) que el patrono los despidió como represalia por su participación activa en los procesos de la querella administrativa. *Íd.,* págs. 24-28.

Tras analizar las alegaciones consignadas, el Tribunal Supremo concluyó que "se podría concluir que estas denuncian actos de práctica ilícita bajo la NLRA". *Íd*., pág. 28. Esto debido a que, de ser ciertas y se probaran esas conductas contenidas en las alegaciones, la NLRB "podría concluir que se constituyó una práctica ilícita del trabajo cuya justipreciación, en virtud de la NLRA, recae bajo su jurisdicción exclusiva". *Íd*., pág. 29. Vale señalar que el Máximo Foro aclaró como sigue:

> [...] si bien la Sec. 7 de la NLRA protege los derechos de los empleados a organizarse y a realizar actividades concertadas con el propósito de ayudarse mutuamente, **en las alegaciones ante los tribunales locales no es necesario plasmar el término 'actividades concertadas', o cualquier equivalente, para que opere el desplazamiento ordenado por el Congreso federal**". *Íd*., pág. 31. (Énfasis nuestro).

Así pues, al realizar nuestra tarea adjudicativa, es irrelevante la consideración de si el fundamento de las reclamaciones es alguna ley local o si en las alegaciones se consignaron palabras o frases sacramentales tales como actividad concertada. Por el contrario, la clave para nuestra

tarea de determinar a cuál foro corresponde atender la controversia consiste en examinar la conducta involucrada, según fue alegada.

**D.**

**Estándar de la NLRB para determinar si existe una actividad concertada para beneficio mutuo**

De otro lado, para poder examinar si una conducta está sujeta a ser sancionada por la NLRA es necesario establecer lo que esa agencia ha definido como actividad concertada para beneficio mutuo, según la Sec. 7 de la NLRA.

En general, una actividad es "concertada" cuando se realiza con o bajo la autoridad de otros empleados y no meramente en representación del propio empleado.[18] *Miller Plastic Products, Inc. and Ronald Vincer*, 372 NLRB No. 134, \*4 (2023). Aunque de primera instancia la palabra "concerted" parecería sugerir un esfuerzo para llevar a cabo actividades entre dos personas o más, la NLRB ha aclarado que la actividad concertada a la cual se refiere la Sección 7 del NLRA, incluye aquellas circunstancias en las que un empleado individual busca iniciar o preparar una acción en grupo, así como la conducta de empleados individuales que llevan a la atención de la gerencia quejas que son realmente grupales. *Íd*. La conducta concertada se interpreta liberalmente de manera que incluya aquella actividad llevada a cabo por una sola persona, pero cuyo objetivo sea iniciar o inducir o preparar una acción en grupo o que haya tenido alguna relación con una acción grupal a favor de los intereses de los empleados. *Íd.,* pág. 8. En el fondo, la pregunta de si una actividad es concertada es una pregunta

---

[18] "In *Meyers I*¸ the Board held that an employee's activity is concerted when it is engages in with or on the authority of other employees, and not solely by and on behalf of the employee himself." *Miller Plastic Products, Inc. and Ronald Vincer*, 372 NLRB No. 134, \*4 (2023).

fáctica que se basa en la totalidad de la evidencia en el expediente. *Íd*., pág. 4.

En *Miller Plastic Products, Inc. and Ronald Vincer*, supra, la NLRB tuvo ante su consideración un caso de despido injustificado por violación a la Sec. 7. El señor Vincer trabajaba en una fábrica manufacturera de plástico. El gobernador del estado de Pennsylvania decretó una emergencia por el COVID-19 y el cierre de todos los negocios no esenciales.

Según consignado por la NLRB, el señor Vincer era una persona muy sociable que frecuentemente hablaba con otros empleados en sus estaciones de trabajo. Al inicio de la pandemia del COVID-19, Vincer hablaba todos los días con otro empleado de apellido Boustead. Este último le mencionó a Vincer que padecía de ciertos problemas médicos, lo que le provocaba estar en alto riesgo de desarrollar severas complicaciones si se contagiaba de COVID-19. Vincer le dijo a Boustead, así como a otros empleados, que Miller Plastic Products no era esencial para la operación durante la pandemia y les sugirió contactar a las autoridades para denunciar que Miller Plastic Products permanecía abierto y en operación.

El jefe de operaciones citó a los empleados a una **reunión grupal** para discutir las operaciones de la planta durante la emergencia. Durante el curso de esa reunión, Vincer manifestó su preocupación de que el patrono no contaba con las precauciones adecuadas y que, por tanto, los empleados no debían estar trabajando. Acto seguido, los demás empleados comenzaron a cuestionar si el patrono cualificaba como un negocio esencial cuyas operaciones podían permanecer abiertas durante la pandemia, a lo cual el jefe de operaciones respondió

que debían seguir trabajando hasta que el gobierno clarificara la situación.

Posteriormente, la esposa de un empleado de apellido Pierson se enfermó y este fue enviado a su casa. No obstante, dos días después regresó a trabajar. Ante ello y preocupado por los protocolos del patrono, Vincer cuestionó al jefe de operaciones sobre cuáles eran los requerimientos o protocolos para que un empleado regresase a trabajar posterior a ser expuesto al COVID-19. De igual modo, Vincer se reunió con su compañero de trabajo Boustead para que este le comunicara con el jefe de operaciones sobre sus vulnerabilidades de salud y los protocolos del patrono que le ponían en riesgo. Al día después Vincer fue despedido alegadamente por mala actitud y afectar la producción.

En su análisis, la NLRB reiteró que cónsono a lo resuelto en *Meyers Industries,* 268 NLRB 493 (1984) (Meyers I), un empleado incurre en actividad concertada cuando:

> [i]t is "engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." 268 NLRB at 497. Subsequently in *Meyers II* [*Meyers Industries,* 281 NLRB 882 (1986)] the Board clarifies that concerted activity under Section 7 "encompasses those circumstances where individual employees seek to initiate or to introduce or to prepare for group action, as well as individual employees bringing truly group complaints to the attention of management." 281 NLRB at 887. […] [T]he Board emphasized therefore that "the question of whether an employee engaged in concerted activity is, at its heart, a factual one" based on the totality of the record evidence. 268 NLRB at 497; 821 NLRB at 886.

En otras palabras, en *Meyers I*, la NLRB determinó que un empleado incurre en actividad concertada cuando actúa en representación de otros empleados, o bajo la autoridad de estos, y no solo en beneficio propio. Posteriormente, en *Meyers Industries*, 281 NLRB 882 (1986) (Meyers II), la NLRB clarificó

que el concepto de actividad concertada incluye aquellas preparaciones que realicen los empleados para llevar a cabo una queja colectiva al patrono. Además, reafirmó que una actividad que en su inicio involucra un comunicador y un oyente puede ser concertada, ya que dicha actividad es un paso preliminar indispensable para la autoorganización de los empleados.

La NLRB concluyó que, en ese caso, la actuación de Vincer fue concertada, dado que se probó que la conducta de Vincer tenía el propósito de llevar a la atención de la agencia las quejas o preocupaciones grupales. La naturaleza grupal de esas quejas, según la NLRB, fue corroborada por el hecho de que luego de que Vincer hiciera los comentarios durante la reunión grupal, hubo otros empleados que también comunicaron sus quejas a la gerencia. Además, se probó que luego de la reunión grupal, Vincer continuó hablando con otros empleados sobre sus preocupaciones respecto a los protocolos para que los empleados expuestos al COVID-19 pudieran regresar al área de trabajo. *Íd*., *11. En fin, la Junta Nacional concluyó que, a la luz de la totalidad de las circunstancias, la conducta de Vincer no era meramente para su beneficio, sino que "was also for mutual aid or protection…", por lo cual determinó que el despido de Vincer fue ilegal y ordenó el pago de una compensación de daños, entre otros remedios. *Íd.*

Así pues, al realizar nuestra tarea adjudicativa, es relevante examinar si la conducta o controversia alegada ante nos consiste en una actividad concertada. Si la referida conducta o controversia está dentro de aquellas sancionadas por la NLRA y es idéntica a la que pudo haber sido presentada ante la NLRB, entonces deberíamos concluir que la NLRA es el foro con jurisdicción primaria.

Discutido el derecho aplicable, estamos convencidos que procede expedir el auto solicitado y dictar Sentencia desestimando el reclamo aquí efectuado por ausencia de jurisdicción en esta etapa.

De los hechos aquí plasmados surge que el señor Gómez Báez instó una querella contra su patrono Pueblo, Inc. En síntesis, reclamó despido injustificado, al amparo de la Ley sobre Despidos Injustificados, Ley Núm. 80 de 1976, supra. También reclamó al amparo de la Ley Núm. 115 de 1991, sobre represalias, por haberse quejado ante OSHA y ante el Gerente de Distrito. En la recopilación de hechos también mencionó que en mayo de 2024 se enteró que el salario de los empleados de Amigo de Los Paseos era de cincuenta centavos (.50) más por hora que los empleados de su tienda en Plaza Guaynabo. Que este asunto se lo preguntó a la gerencia y, que luego, fue despedido.

Pueblo contestó la querella y alegó ausencia de jurisdicción. Como parte del descubrimiento de pruebas, se le tomó una deposición al querellante Gómez Báez. De igual manera se le tomó una deposición a Oscar Alberto, empleado de Pueblo. Luego de estos trámites, Pueblo interpuso una *Moción de Desestimación por Falta de Jurisdicción Sobre la Materia y Solicitud de Sentencia Sumaria*. En esencia, alegó que el señor Gómez Báez atribuyó que su despido fue producto de la secuencia de actividades protegidas en las que participó, que incluyen las expresiones y quejas ante el Gerente de Distrito y personal de OSHA, así como, quejas ante la gerencia sobre por qué había una paga desigual a los empleados de su tienda en comparación con otras tiendas de la misma compañía. Indicaron que la conducta imputada al patrono involucraba una práctica

ilícita del trabajo, la jurisdicción recaía en el *National Labor of Relations Act* (NLRA), por lo que, procedía la desestimación de la acción incoada en el tribunal.

Tras evaluar la oposición de Gómez Báez y los escritos posteriores que las partes presentaron el foro primario denegó la solicitud de desestimación. En la resolución aquí cuestionada, el foro de instancia plasmó ciertos hechos como no controvertidos. Entre ellos los siguientes:

> 13. Para el mes de agosto de 2022, el Señor Gómez Báez le planteó al Señor Eduardo Crespo, gerente de distrito para ese entonces, que todo el personal que operaba maquinaria debía tener unas certificaciones de OSHA, que alegadamente no tenían.
> […]
>
> 20. El 13 de marzo de 2024, inspectores de OSHA visitaron la tienda de Amigo Plaza Guaynabo por alegaciones relacionadas a los baños de caballeros, neveras de alimentos y almacén.
> 24. El 13 de mayo de 2024, el querellante le inquirió al señor Sergio de la Cruz, Gerente de la tienda Amigo Plaza Guaynabo, que por qué si las tiendas de Pueblo no eran franquicias, en Amigo Los Paseos pagaban un salario de $10.00 por hora a los empleados, lo que era cincuenta centavos (.50) más por hora que a los empleados de su tienda en Plaza Guaynabo.
>
> 25. El Señor Gómez Báez indicó, en cuanto al reclamo de salario y horario, que: "pero yo… yo personalmente, yo estaba hablando por mí". Además, declaró que "Yo… yo, este, estaba reclamando por mí".

Como hechos en controversia, el foro primario especificó los siguientes:

> 2. Existe controversia sobre lo acontecido en la conversación telefónica del, 15 de mayo de 2024, entre el Señor Gómez Báez, querellante, y el Señor Oscar Alberto, oficial de recursos humanos de Pueblo Inc. Además, existe controversia sobre los siguientes hechos relacionados con dicha llamada telefónica, estos son:
>
> a. Si el 15 de mayo de 2024, el Señor Gómez Báez procedió a comunicarse con el Señor Oscar Alberto, oficial de Recursos Humanos, Salud y Seguridad Ocupacional de Pueblo, **con el interés de coordinar una reunión con él y otros**

**compañeros de trabajo para preguntarle sobre el tema de la diferencia salarial.**

De lo anterior podemos concluir que, en efecto, el señor Gómez Báez realizó unas reclamaciones a su patrono sobre asuntos de seguridad bajo el OSHA, así como para discutir situaciones de trabajo en torno a la diferencia salarial entre los empleados de la tienda de los Paseos y la de Plaza Guaynabo. Asimismo, consideramos que el empleado alegó que fue despedido en represalia por ejercitar sus reclamos.

Por tanto, a todas luces, la acción de Gómez Báez podría catalogarse como la acción concertada, a favor suyo y de sus compañeros de trabajo para lograr igualdad salarial y de condiciones de trabajo, que se encuentra cobijada bajo la sección 7 del NLRA, supra. Ello, independientemente a que, según el foro primario, existe controversia en cuanto a si el señor Gómez Báez requirió una reunión con él y otros compañeros de trabajo sobre el tema de la diferencia salarial.

En esas circunstancias, el Tribunal Supremo de Puerto Rico en *Auxilio Mutuo*, supra, invitó a los tribunales a apreciar si la parte que sostiene la prelación de la NLRA constató que los hechos alegados por el demandante son o se podría argumentar que son actos de práctica ilícita según el NLRA. Realizamos ese análisis y podemos razonablemente concluir que los reclamos del señor Gómez Báez, de probarse correctos, deben ser atendidos y evaluados en primer orden por la agencia con jurisdicción para ello. Al evaluar los hechos no controvertidos y los controvertidos, concluimos que le corresponde al foro administrativo dilucidar, primeramente, si la presente causa presenta una acción concertada del querellante que está cobijada bajo las disposiciones del NLRA. Es decir, le

corresponde al NLRB evaluar si ejerce o no su jurisdicción primaria exclusiva en este asunto.

Por las razones antes expresadas, expediríamos el Auto de *Certiorari* y revocaríamos la *Resolución* recurrida, toda vez que el foro primario, en esta etapa, no ostenta jurisdicción sobre la materia para evaluar este asunto, por ello respetuosamente disentimos de lo resuelto por las compañeras del panel.

ERIC R. RONDA DEL TORO
**Juez de Apelaciones**